UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,

v.                                                       Case No. 17-C-1272

MOJITOS MEXICAN GRILL & BAR, LLC, *et al.*,

        Defendants.

## ORDER GRANTING DEFAULT JUDGMENT

Plaintiff J & J Sports Productions, Inc. brought this action against Mojitos Mexican Grill & Bar, LLC, as well as its members Shirley Bullock-Vazquez and Jose Luis Vazquez-Figueroa in their individual capacities. The complaint alleges that the defendants knowingly and willfully violated 47 U.S.C. §§ 553 and 605 by unlawfully intercepting and exhibiting the television broadcast of the "Floyd Mayweather, Jr. v. Marcos Rene Maidana, II WBC World Lightweight Championship Fight Program" on September 13, 2014, at Mojitos in Appleton, Wisconsin. Jurisdiction exists under 28 U.S.C. § 1331. After Bullock-Vazquez and Vazquez-Figueroa answered the complaint, the court held a November 20, 2017 scheduling hearing, at which Bullock-Vazquez and counsel for Plaintiff appeared by telephone. Subsequent to the telephone hearing, Plaintiff and Bullock-Vazquez submitted stipulated facts. ECF No. 12. Mojitos, however, has failed to appear in this action, and the clerk entered default against Mojitos on February 26, 2018. This matter now comes before the court on Plaintiff's motion for entry of default judgment against Mojitos. ECF No. 15. For the reasons set forth below, the motion for default judgment will be granted.

## BACKGROUND

Plaintiff and Bullock-Vazques have stipulated to most of the undisputed background facts in this case. ECF No. 12. On September 13, 2014, the "Floyd Mayweather, Jr. v. Marcos Rene Maidana, II WBC World Lightweight Championship Fight Program," including undercard bouts and the entire television broadcast ("the Broadcast"), was shown on five television screens at Mojitos. *Id.* ¶ 1. Bullock-Vazquez owned and operated Mojitos on the day of the fight, although she no longer owns or operates the restaurant. *Id.* ¶¶ 2–3. Mojitos' capacity was 90 people. *Id.* ¶ 4. The commercial rate for showing the Broadcast for a building with a capacity of 0–100 people was $2,200, but neither Bullock-Vazquez nor anyone else acting on behalf of the restaurant ever paid the commercial rate. *Id.* ¶¶ 5–6. No cover charge was needed to enter Mojitos on the night of the Broadcast, and Mojitos did not advertise the Broadcast. *Id.* ¶¶ 7–8. Plaintiff's investigator took three headcounts during the Broadcast, resulting in counts of 65, 75, and 80 people. *Id.* ¶ 9.

The remaining facts are taken from the allegations in Plaintiff's complaint and the affidavit and supporting documents filed with Plaintiff's motion for default judgment. ECF No. 1; ECF No. 17. They are deemed admitted as a consequence of Mojitos' default. *See, e.g.*, *Black v. Lane*, 22 F.3d 1395, 1397 n.4 (7th Cir. 1994). Plaintiff owned the distribution rights to the Broadcast, which originated via satellite uplink and was then re-transmitted to cable systems and satellite companies via satellite signal. Plaintiff entered into sub-licensing agreements with entities located within Wisconsin that permitted those entities to exhibit the Broadcast to patrons within their establishments.

One of Plaintiff's investigators visited Mojitos at 9:31 p.m. on September 13, 2014. ECF No. 17-2 at 1. The investigator observed five televisions displaying the fight. *Id.* In the bar area,

three television sets and a projection screen displayed the fight on the west wall and one displayed it on the south wall. *Id.* The investigator observed an interview with Mike Tyson followed by the beginning of the fight, in which Mayweather wore floral and white shorts with black stripes and Maidana word red shorts. *Id.* The investigator left the establishment at 10:55 p.m. *Id.* at 2.

## LIABILITY

The complaint alleges that the defendants violated 47 U.S.C. §§ 553 and 605, but the stipulations of fact do no establish how, precisely, the defendants intercepted the Broadcast (i.e., via coaxial cable or satellite). A plaintiff may not simultaneously pursue relief under §§ 553 and 605 because the sections target two distinct types of piracy. *See United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996) (holding that 47 U.S.C. § 605 governs the interception of programming as it travels through the air, while 47 U.S.C. § 553 governs the interception of cable television programming traveling over a cable network). Plaintiff apparently requests damages under § 605 (ECF No. 17 at 1–2), which often produces higher damages awards, but cannot demonstrate conclusively that Mojitos intercepted a satellite signal on September 13, 2014. Nevertheless, because Mojitos' failure to appear or defend deprived Plaintiff of the opportunity to conduct discovery regarding the transmission at issue, I conclude that liability is appropriately established under § 605. *Accord J & J Sports Prods., Inc. v. Aguilera*, No. 09-4719, 2010 WL 2362189, at *2 (N.D. Ill. June 11, 2010).

As a result of Mojitos' default and the stipulated facts, Mojitos is deemed to have unlawfully intercepted the Broadcast and shown it to its patrons, and it is deemed to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)

3

("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."); *see also Kingvision Pay-Per-View, Ltd. v. Scott E'S Pub., Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) ("'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'" (quoting *ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985))). "'In addition, the court may draw an inference of willfulness from a defendants failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.'" *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 138 (D. Conn. 2007) (quoting *J & J Sports Prods., Inc. v. Drake*, No. 06CV246 (ILG)(RML), 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006)).

## DAMAGES

A claimant entitled to relief under § 605 may elect actual or statutory damages pursuant to § 605(e)(3)(C)(i)(I). Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff also seeks enhanced damages for a willful violation. Section 605 permits enhanced damages of up to $100,000, in the discretion of the court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g.*, *Kingvision*, 146 F. Supp. 2d at 959–61. Finally, under § 605(e)(3)(B)(iii), Plaintiff has requested an award of attorneys' fees and costs in the amount of $1,722.

I first turn to the question of what amount of statutory damages is appropriate in this case. There are various ways in which courts have gone about calculating statutory and enhanced damages for violations of § 605:

4

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show. *See, e.g.*, *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489 (listing cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y.1997) (same). Some courts have awarded a flat sum for each violation. *See, e.g.*, *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489–90 (listing cases); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same). A multiplier has been used in cases of willful violations. *See, e.g.*, *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, No. CV 88 2834(ASC), 1991 WL 58350, *2 (E.D.N.Y. 1991) (awarding an additional amount for willful violation in the amount of five times the initial statutory damages award).

*Kingvision*, 146 F. Supp. 2d at 960. The court in *Kingvision* calculated the statutory damages based upon the rate the plaintiff charged its customers for the right to exhibit the program, which in turn was based upon the maximum fire code occupancy of the building in which the exhibition was to take place.

Here, Plaintiff has provided its rate card indicating what it would charge to permit the defendants to show its fight program based on the maximum capacity of the facility where the event is broadcast. ECF No. 17-1. Because Mojitos had a capacity of 90 people, Plaintiff's corresponding standard rate was $2,200. Accordingly, the court will award statutory damages of $2,200.

As I have already concluded that Mojitos' violation was willful within the meaning of the statute, I now turn to the question of what amount of enhanced damages is appropriate. The only guidance the statute itself gives courts in assessing damages for willful violations is that they not exceed $100,000 for violations of § 605 and $50,000 for violations of § 553. 47 U.S.C. § 553(c)(3)(B); *id.* § 605(e)(3)(C)(i)(II). In order to arrive at an enhanced damage figure, courts have considered factors such as: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and

5

(5) whether defendant collected a cover charge on the night of the event. *Joe Hand Prods. v. Kaczmar*, No. 08-2910, 2008 WL 4776365, at *2 (N.D. Ill. Oct. 29, 2008). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.*

Here, there is nothing to suggest that Mojitos has pirated in the past, and there is no indication of the extent of any ill-gotten gains by Mojitos or the actual damages suffered by Plaintiff for this act of piracy. There is also no evidence that Mojitos advertised the event, and the investigator was not required to pay a cover charge to enter the bar. Thus, all of these factors point toward a lower amount of enhanced damages. As noted, between 65 and 80 people were in Mojitos during the investigator's visit, also suggesting that Mojitos did not receive substantial financial gains as a result of its piracy of the fight program. In order to deter future violations, the court will impose enhanced damages of $6,600, applying a multiplier of three times the amount of the $2,200 in statutory damages.

## COSTS AND ATTORNEYS' FEES

Finally, I turn to Plaintiff's request that I award $1,722 in costs and attorneys' fees. Under § 605(e)(3)(B), if a violation of the section is found, attorneys' fees and costs are mandatory. The total attorney hours submitted, multiplied by the hourly rate requested by plaintiff comes to a total of $1,250 in attorneys' fees. Aff. of Peter S. Balistreri, ECF No. 17. Plaintiff also requests $472 in costs: $400 for filing fees and $72 for service of process. *Id.* Plaintiff's request is reasonable, so the court will award Plaintiff $1,722 in costs and attorneys' fees.

## CONCLUSION

For the reasons stated above, the court grants Plaintiff's motion for judgment by default against Mojitos in the amount of $10,522. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this 9th day of April, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court